IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GEORGE WILLIAM GANTT-EL,          )
                                  )
              Petitioner,         )
                                  )
         v.                       )        No. 1:11-cv-264
                                  )
JUDY BRANDON, Superintendent      )
of the Caswell Correctional       )
Center,                           )
                                  )
              Respondent.         )

## MEMORANDUM OPINION AND ORDER

Pro se Petitioner George William Gantt-El ("Gantt-El") is
serving a life sentence in a North Carolina state prison after
pleading guilty in 1987 to second degree murder, two counts of
assault with a deadly weapon with intent to inflict serious
injury, and one count of robbery with a dangerous weapon (armed
robbery).  (Doc. 6-2; Doc. 6-3.)  His action[1] is before this
court on a petition for a writ of habeas corpus pursuant to 28
U.S.C. § 2254, based on certain disciplinary action taken
against him during his incarceration.  (Doc. 2.)  Respondent

---

[1] Gantt-El is no stranger to the legal system.  During his
incarceration both in Maryland and in North Carolina, he has filed
over 40 different lawsuits for a wide variety of claims and
activities; it does not appear that he has been successful in any.
See Gantt v. Anderson, No. 1:09CV40, 2010 WL 3895576 (M.D.N.C. Sept.
29, 2010), adopted, No. 1:09CV40 (M.D.N.C. Dec. 1, 2010), Doc. 63;
Gantt v. Maryland Div. of Corr., 894 F. Supp. 226, 227 (D. Md. 1995)
(noting that Gantt has filed over 40 lawsuits which were dismissed for
various reasons), aff'd, 73 F.3d 357 (4th Cir. 1996) (per curiam)
(unpublished table decision).

Judy Brandon ("Brandon"), the Superintendent of the Caswell Correctional Center prison, moves for summary judgment on Gantt-El's claims. (Doc. 5) Gantt-El in turn has filed a series of motions seeking expanded discovery (Doc. 11); an evidentiary hearing (Doc. 14); leave to supplement his habeas petition (Doc. 15); recusal of Brandon's attorney, Mary Carla Hollis ("Hollis") (Doc. 16); and an order compelling discovery (Doc. 17). He has also filed requests for the production of certain documents from Brandon. (Doc. 10; Doc. 18.) For the following reasons, Gantt-El's motions will be denied, Brandon's motion for summary judgment will be granted, and this action will be dismissed.

## I. BACKGROUND

In 1987, Gantt-El pleaded guilty in North Carolina state court to second degree murder (a class C felony), two counts of assault with a deadly weapon with intent to inflict serious injury, and armed robbery. (Doc. 6-2.) He was sentenced under the Act to Establish a Fair Sentencing System in North Carolina Criminal Courts ("NCFSA"), ch. 760, 1979 N.C. Sess. Laws 850 (repeal effective January 1, 1995), to life in prison for the second degree murder charge, 20 years for each assault with a deadly weapon charge, and 14 years for the armed robbery charge.[2]

---

[2] The NCFSA was repealed and replaced on January 1, 1995, with the Structured Sentencing Act. _See_ An Act to Provide for Structured Sentencing in North Carolina, ch. 538, 1993 N.C. Sess. Laws 2298 (codified at 15A-1340.10 _et seq._).

(Doc. 6-2 at 2; Doc. 2 at 1.) The term-of-years charges were ordered to be served consecutively to his life sentence but concurrently with a 25-year sentence imposed by the state of Maryland. (Doc. 6-2 at 2.)

After Gantt-El completed service of his Maryland sentence, he was transferred to the North Carolina prison system in November 2005 to serve the remainder of his North Carolina sentence.

On February 28, 2008, Gantt-El filed a Motion for Appropriate Relief ("MAR") in North Carolina Superior Court challenging his October 1987 guilty plea as to the North Carolina convictions. (Doc. 12-1 at 2-4.) He claimed that his plea was not voluntary, his counsel was ineffective, and the sentence was invalid. (Id.) The Superior Court denied the motion. (Id.) Gantt-El subsequently filed a petition for writ of habeas corpus with this court, asserting the same grounds; the petition was denied as untimely. Gantt v. Anderson, No. 1:09CV40, 2010 WL 3895576 (M.D.N.C. Sept. 29, 2010), adopted, No. 1:09CV40 (M.D.N.C. Dec. 1, 2010), Doc. 63.

Gantt-El's current habeas petition arises out of an incident at the Caswell Correctional Center on March 13, 2010. (Doc. 2 at 10.) While standing in line in the dining room, Gantt-El and two others were approached by a correctional officer who asked if they were wearing their belts. (Id.) As

the men displayed their belts, the officer asked Gantt-El to lift his jacket, and Gantt-El stated, "I am not like those punks, I ware [sic] my belt and don't have my pants down around my ass." (Doc. 6-4 at 8.) The corrections officer directed Gantt-El to move along and to "quit running his mouth," but Gantt-El refused and began to verbally harass the officer. (Id. at 4, 8.) Officers restrained Gantt-El, and when an officer retrieved a can of pepper spray, Gantt-El threatened, "go ahead and spray me and I will shove it up your ass." (Id. at 4.)

Gantt-El was charged with two prison disciplinary offenses authorized by North Carolina's Structured Sentencing Act ("SSA"), N.C. Gen. Stat. § 15A-1340.10 et seq.: disobeying orders, and using profane language. (Doc. 6-5 at 10.) He was found guilty of both following a disciplinary hearing and as to each was assessed punishment of segregation for 30 days, loss of 20 days of good-time credit, and an administrative fee. (Id.) He appealed the decision to the Department of Corrections disciplinary appeals hearing officer, who upheld the convictions. (Doc. 2 at 10-16.)

Gantt-El then made the disciplinary punishments the subject of a state petition for writ of habeas corpus, contending that the prison disciplinary procedures do not apply to him and that the disciplinary charges were false. (Doc. 6-6.) The trial court summarily denied the petition, finding it "wholly and

4

totally without merit." (Doc. 6-7 at 2.) Gantt-El unsuccessfully appealed his petition to the North Carolina Court of Appeals and the North Carolina Supreme Court. (Doc. 2 at 7-9, 17.)

Gantt-El filed his present petition for writ of habeas corpus on April 5, 2011. (Doc. 2.) In the petition, Gantt-El raises the same objections he raised in his state petition, which he contends the North Carolina erred in dismissing. (Id.) He has also filed numerous motions seeking discovery.

Brandon now moves for summary judgment, arguing that Gantt-El's claim is meritless because he has a life sentence and the loss of good-time credits does not affect the fact or duration of his confinement. (Doc. 6 at 4-5.) Alternatively, Brandon argues, Gantt-El's claim that the prison engaged in ex post facto application of disciplinary procedures is meritless and his claims that false evidence was used against him in the disciplinary hearing are unassailable on federal review. (Id. at 5, 11.) Finally, she claims, the state court properly denied the habeas petition and this court should be bound by the state's determination. (Id. at 12.) Brandon has not responded to Gantt-El's various motions.

## II. ANALYSIS

### A. Cognizable Claim

A writ of habeas corpus permits a prisoner to challenge the fact or duration of his confinement.  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973).  Gantt-El raises claims relating to his loss of good-time credits because of his disciplinary infraction, what he perceives as the manufacturing of evidence against him in his disciplinary proceeding, and the state court's dismissal of his habeas action.  (Doc. 2.)  Before the court may consider the merits of Gantt-El's petition, however, it must determine whether he raises challenges to the fact or duration of his confinement.  See Standifer v. Ledezma, 653 F.3d 1276, 1280 (10th Cir. 2011) ("It is well-settled law that prisoners who wish to challenge only the conditions of their confinement, as opposed to its fact or duration, must do so through civil rights lawsuits filed pursuant to 42 U.S.C. § 1983 . . . not through federal habeas proceedings."); Gibson v. North Carolina, 991 F.2d 789 (4th Cir. 1993) (per curiam) (unpublished table decision).

Generally speaking, an action for the restoration of good-time credits is actionable in a habeas petition.  Wilkinson v. Dotson, 544 U.S. 74, 79 (2005); see also Preiser, 411 U.S. at 476, 500 (holding that habeas corpus actions are the appropriate avenue to federal relief for "state prisoners who were deprived

6

of good-conduct-time credits by [state prison officials] as a result of disciplinary proceedings"). However, the Supreme Court has explained that habeas petitions are inappropriate "where success in the action would not necessarily spell immediate or speedier release for the prisoner." Wilkinson, 544 U.S. at 81 (emphasis in original).

North Carolina's prison regulations at the time of Gantt-El's incident, which were promulgated under the SSA, dictate that inmates sentenced under the NCFSA to life in prison for the commission of a Class C felony are ineligible to earn good-time credits towards a sentence reduction.[3] Instead, their good-time credits are used only to reduce the amount of time they must serve before becoming parole eligible. Teasley v. Beck, 155 N.C. App. 282, 289-90, 574 S.E.2d 137, 142 (2002). However, the Supreme Court has held that challenges to prison procedures that, if successful, will result in "speed[ier] consideration of a . . . parole application" rather than an "immediate release or a shorter stay in prison" do not implicate "core" habeas concerns. Wilkinson, 544 U.S at 82.

---

[3] Division of Prisons, N.C. Dep't of Correction, Policy and Procedure, Sentence Reduction Credits, ch. B, §§ .0111(d)(4), .0112(c)(4) (issued Oct. 5, 2007) (providing that inmates sentenced under the NCFSA are eligible for good-time and gain-time credits to reduce their sentences if they meet the requisite conditions; however, those convicted of a Class C felony and sentenced to life imprisonment are ineligible to earn good-time as a sentence reduction credit).

7

Here, Gantt-El is a prisoner serving a Class C life sentence in addition to terms-of-years sentences. As such, his good-time credits will not be used to calculate the length of his sentence. (Doc. 6-10 at 3.) Their loss, therefore, does not affect the fact or duration of his confinement. The fact that Gantt-El is also serving terms-of-years convictions does not change this result. Cf. Hemphill v. Jackson, No. 308CV150-02-MU, 2008 WL 2761320, at *2 (W.D.N.C. July 11, 2008) ("Petitioner is serving a life sentence under a statutory provision which prohibits the use of good-time credits as a means for obtaining a reduced sentence. Accordingly, Petitioner merely is accruing and/or losing good-time credits on paper in the event that, if his life sentence ever is overturned, such credits can be applied to the resulting determinative sentence. . . . [H]owever, such a speculative and unlikely event simply falls short of providing Petitioner a sufficient basis upon which to challenge the loss of his good-time credits in a proceeding under § 2254."). Accordingly, Gantt-El's claim based on loss of good-time credit fails to state a cognizable claim under § 2254.

## B.   **Ex Post Facto** Claim

As a secondary basis for the court's decision, the court finds that Gantt-El's claims do not entitle him to relief on the merits. Summary judgment is appropriate when the movant

demonstrates that there is no genuine dispute of material fact and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Habeas cases, like all other civil cases, are subject to summary judgment analysis. See Rules Governing Section 2254 Cases in the United States District Courts ("Habeas Rules"), Rule 12. Yet, where a habeas petition involves a challenge to a prior state court proceeding, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, creates a "highly constrained" scope of review, Jackson v. Johnson, 523 F.3d 273, 276 (4th Cir. 2008). Indeed, even for adjudications in which a state court declines to articulate any reasons for its decision, Harrington v. Richter, --- U.S. ---, 131 S. Ct. 770, 785 (2011), a federal court "may grant a petition with respect to any claim adjudicated on the merits in state court only if the state-court decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court." Jackson, 523 F.3d at 276 (citing 28 U.S.C. § 2254(d)(1)).

A state court decision is "contrary to" clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Conner, J.,

majority opinion). A state court engages in an unreasonable application of clearly established federal law when the court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case," id. at 413, or "'applies a precedent in a context different from the one in which the precedent was decided and one to which extension of the legal principle of the precedent is not reasonable [or] fails to apply the principle of a precedent in a context where such failure is unreasonable,'" Jackson, 523 F.3d at 277 (alteration in original) (quoting Robinson v. Polk, 438 F.3d 350, 355 (4th Cir. 2006)). The phrase "clearly established federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decision as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. In assessing a petitioner's allegation that a state-court decision is deficient, a federal district court must presume that the state court's finding of facts were correct unless the petitioner rebuts that presumption by "clear and convincing evidence." Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007) (citing 42 U.S.C. § 2254(e)(1)).

Here, Gantt-El challenges the application of the SSA's prison disciplinary procedures applied to him. He contests two provisions specifically: the loss of good time credit for minor

10

offenses, and the imposition of a $10 administrative fee for his violations.

As to the good-time credit contention, the NCFSA (under which Gantt-El was sentenced) permitted the loss of good-time credits only for major, not minor, offenses. See NCFSA, ch. 760, § 2, 1979 N.C. Sess. Laws 850, 854-55 (repeal effective January 1, 1995). This provision was repealed with the passage of the SSA, which became effective on January 1, 1995. N.C. Gen. Stat. § 15A-1340.10. Regulations adopted pursuant to the SSA provide for the loss of good-time and gain-time credits for major and minor violations. (Doc. 6-10 at 3-4.) Gantt-El thus contends that the application of the SSA to his disciplinary offenses violates the Ex Post Facto Clause of the U.S. Constitution because prison regulations promulgated under the SSA provide a punishment for minor disciplinary offenses that did not exist under the NCFSA. Gantt-El's argument is without merit.

The Constitution provides that "[n]o state shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1. The Supreme Court has held that the Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." Weaver v. Graham, 450 U.S. 24, 30 (1981). Thus, for Gantt-El to prevail on his ex post facto claim, he must show

"that the law he challenges operates retroactively . . . and that it raises the penalty from whatever the law provided when he acted." Johnson v. United States, 529 U.S. 694, 699 (2000) (applying the federal Ex Post Facto Clause); see also Burnette v. Fahey, --- F.3d ---, No. 11-1324, 2012 WL 2695854 (4th Cir. July 9, 2012) ("To state a claim for a violation of this provision, a plaintiff must plead facts showing the retroactive application of a new rule that 'by its own terms' or through 'practical implementation' creates a 'significant risk' of extending the period of incarceration to which he is subject." (quoting Garner v. Jones, 529 U.S. 244, 255 (2000)). Furthermore, AEDPA requires a habeas petitioner like Gantt-El to demonstrate that the North Carolina courts were unreasonable in their application of the Ex Post Facto Clause as articulated by controlling Supreme Court precedents in order to prevail.

The United States Court of Appeals for the Fourth Circuit has held that prison regulations may be subject to "reasonable amendments as necessary for good prison administration, safety[,] and efficiency, without implicating ex post facto concerns." Ewell v. Murray, 11 F.3d 482, 485-86 (4th Cir. 1993). An inmate "has no right to a particular set of prison regulations adopted to maintain the order, safety, and efficiency of the prison." Id. at 486. Thus, as long as a new regulatory scheme "does not add punishment for the original

12

crime for which the inmate was incarcerated," inmates may lose good time credits for their subsequent conduct that violates the new regulations. Id.

In this case, it cannot be said that North Carolina's courts unreasonably applied the Ex Post Facto Clause or controlling Supreme Court precedent in denying Gantt-El the relief that he seeks. First, while North Carolina's courts summarily dismissed Gantt-El's habeas petition, the state's courts have already determined that applying the SSA's regulations to prisoners sentenced before the act's imposition (like Gantt-El) does not run afoul of the Ex Post Facto Clause or Weaver because the SSA only authorizes the loss of good-time credit "when inmates choose to commit disciplinary infractions." Smith v. Beck, 176 N.C. App. 757, 760-61, 627 S.E.2d 284, 287 (2006). This position, as the Court of Appeals of North Carolina correctly recognized, is consistent with the Fourth Circuit's decision in Ewell, which denied habeas relief to inmates challenging new prison regulations that permitted the loss of good-time credits as a consequence of disciplinary infractions. Ewell, 11 F.3d at 487. Moreover, it is evident that applying the SSA to Gantt-El did not "raise[] the penalty [for his original crime] from whatever the law provided when he acted." See Johnson, 529 U.S. at 699. Instead, prison officials removed a portion of Gantt-El's good-time credits

13

pursuant to North Carolina's reasonable prison regulations for his conduct on March 13, 2010. Consequently, this basis of his challenge lacks merit.

Gantt-El's second contention -- that the assessment of an administrative fee violates the Ex Post Facto Clause -- is not cognizable under 28 U.S.C. § 2254 because its imposition does not affect the fact or duration of his confinement. See Wilkinson, 544 U.S. at 81-82 (explaining that habeas corpus remedies are properly applied only "when they seek to invalidate the duration of [an inmate's] confinement" (emphasis added)); Gaskins v. Johnson, 443 F. Supp. 2d 800, 803 (E.D. Va. 2006) ("[I]n challenges to prison procedures, where success in the action would not necessarily spell immediate or speedier release for the prisoner, § 1983, not habeas corpus, is the appropriate remedy." (citation and internal quotation marks omitted)). Because a successful challenge to the $10 administrative fee would not result in a shorter duration of confinement, Gantt-El's remedy, if any, lies with 42 U.S.C. § 1983. Cf. In re DNA Ex Post Facto Issues, 561 F.3d 294, 298-99 (4th Cir. 2009) (employing 42 U.S.C. § 1983 to assess the constitutionality of a South Carolina law that required state prisoners to pay an administrative fee (to offset the cost of obtaining the inmates' DNA samples) before the inmates could be paroled or released). Indeed, as the Supreme Court has held, claims affecting the

14

circumstances of confinement may be presented pursuant to 42 U.S.C. § 1983. Muhammad v. Close, 540 U.S. 749, 750 (2004) (per curiam).[4]  Thus, Gantt-El's constitutional challenge to the imposition of an administrative fee will be dismissed without prejudice to his right, if any, to raise the claim in a civil rights action pursuant to 42 U.S.C. § 1983.

For these reasons, Gantt-El has failed to meet his burden for obtaining habeas relief on his Ex Post Facto Clause claim.

**C.  False Evidence Claim**

Gantt-El also contends that his reduction in good-time credit was the product of false evidence. (Doc. 2 at 7.)  The Supreme Court has held that in order for revocation of an inmate's good-time credits to be proper, the findings of the prison disciplinary board must be supported by "some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985). Thus, federal courts should not conduct an independent review of the entire record or make credibility determinations. Id. at 455-56.  Instead, the determination of a prison disciplinary board should be overturned only where it is entirely lacking in evidence such that it can be said to be arbitrary or capricious.

---

[4]  Gantt-El's contention that North Carolina law prohibits the Department of Corrections from implementing a fee for prisoners' disciplinary infractions is not cognizable in this court.  A federal habeas court has no authority "to correct the interpretation by state courts of a state's own laws." Sharpe v. Bell, 593 F.3d 372, 383 (4th Cir. 2010) (citing Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)).

Id. at 457; Rankins v. Keller, No. 3:10CV297-3-MU, 2010 WL 3240132, at *3 (W.D.N.C. Aug. 16, 2010), appeal dismissed, 409 F. App'x 703 (4th Cir. 2011) (unpublished).

Here, there is at least "some evidence in the record" that supports the disciplinary officer's decision to revoke Gantt-El's good-time credits. The record contains multiple entries of testimony from correctional officers describing the March 13, 2010 incident and Gantt-El's refusal to follow orders. (Doc. 6-5 at 3-8.) There is also evidence that when a guard displayed a can of pepper spray because of Gantt-El's resistance, Gantt-El threated to "shove it up [the guard's] ass" if he sprayed him. (Id. at 4.) "Ass" is commonly recognized as "vulgar slang" for "buttocks." American Heritage Dictionary (5th ed. 2011). Thus, the disciplinary board's decision to revoke a portion of Gantt-El's good-time credits for disobeying orders and using profane language is supported by the record, and Gantt-El's petition on this basis will be denied.

### D. Claims Related to State Court Proceedings

The final bases for Gantt-El's habeas petition are directed towards the adequacy of his North Carolina state court proceedings. First, he challenges the North Carolina courts' failure to "liberally construe" his state-court habeas petition

and to address the "operative facts."[5]  (Doc. 2 at 7.)  However,
there is no constitutional mandate that states provide
procedures for post-conviction review.  <u>Lackawanna Cnty. Dist.</u>
<u>Attorney v. Coss</u>, 532 U.S. 394, 402-03 (2001) (citing
<u>Pennsylvania v. Finley</u>, 481 U.S. 551, 557 (1987)).  And even
where a state provides for habeas review, as North Carolina did
here, and an error occurs in that proceeding, "a petitioner is
not entitled to federal habeas relief" because his claim of
error attacks the "proceeding collateral to detention and not
. . . the detention itself."  <u>Lawrence v. Branker</u>, 517 F.3d 700,
717 (4th Cir. 2008).  Consequently, Gantt-El's collateral attack
on his state habeas proceeding is without merit.

    Second, Gantt-El attempts to raise renewed challenges to
both his original conviction and the denial of his original
habeas petition related to that conviction.  (Doc. 12 at 9-11.)
He has already petitioned this court for a writ of habeas corpus
related to his North Carolina conviction, which was denied as
time-barred.  <u>See</u> <u>Gantt</u>, 2010 WL 3895576, at *4.  Under AEDPA,
Gantt-El is precluded from renewing arguments that he already

---

[5] Gantt-El also mentions the "conditions of [his] confinement" (Doc. 2
at 7) but beyond this fleeting reference provides no evidentiary
support or argument in favor of habeas relief on that ground.
Challenges to the conditions of confinement are properly brought as
section 1983 actions.  <u>Standifer</u>, 653 F.3d at 1280; <u>see also</u> <u>Nelson v.</u>
<u>Campbell</u>, 541 U.S. 637, 643 (2004).  Accordingly, to the extent Gantt-
El seeks to challenge the conditions of his confinement, his argument
-- such as it is -- is dismissed without prejudice to him raising the
claim in a civil rights action under 42 U.S.C. § 1983.

made in his original collateral attack on his state-court conviction and sentence. 28 U.S.C. § 2244(b)(1). To the extent he attempts to raise new grounds for relief that were not identified in his prior application for habeas relief, he must receive permission from the Fourth Circuit Court of Appeals prior to doing so, which he has not done. Id. § 2244(b)(3)(A). For these reasons, his attempts to challenge his original conviction and habeas petition are without merit.

### E. Additional Motions/Filings

Since filing his response to Brandon's motion for summary judgment, Gantt-El has submitted a number of additional motions and filings to the court. Many of his motions are discovery-related and involve attempts to compel discovery or expand the scope of discoverable material. (Doc. 11; Doc. 17.)[6] Gantt-El, however, has failed to show good cause for expanded discovery. Habeas Rule 6(a); see also Fed. R. Civ. P. 26(b)(2)(C)(iii) (requiring the court to limit the scope of discovery where, in light of the issues at stake and the relative positions of the parties, the "burden or expense of the proposed discovery

---

[6] Two of Gantt-El's filings related to discoverable materials were mistakenly categorized as "motions." (See Doc. 10, Doc. 18, and Docket Entries at March 25, 2012.) They are, as the record now reflects, simply discovery requests. Such requests must not be filed with the court "until they are used in the proceeding or the court orders filing." Fed. R. Civ. P. 5(d)(1). The motions have been terminated as improperly filed, but to the extent they seek action from the court, Gantt-El's "First Request for Production of Documents" (Doc. 10) and "Second Request for Production of Documents" (Doc. 18) are denied for the reasons explained above.

outweighs its likely benefit"). Accordingly, his discovery motions will be denied.

Gantt-El's request for an evidentiary hearing into (and a preliminary injunction against) what he characterizes as Brandon's retaliation, mail thefts, denial of medical care, and arbitrary and unlawful acts (Doc. 14) is similarly precluded. Gantt-El raised these exact arguments in his state habeas petition (Doc. 6-6 at 8), and they were found by a state Superior Court Judge to be "wholly and totally without merit" (Doc. 6-7 at 2). As a result, he must demonstrate that the state court decision was contrary to or involved an unreasonable application of federal law, or that the decision was based on an unreasonable determination of the facts presented in the state proceeding, as required by 28 U.S.C. § 2254(d). He has failed to do so. This renders any proposed evidentiary hearing unnecessary. See Williams v. Taylor, 529 U.S. 420, 444 (2000) (concluding that a federal court's rejection of a habeas petition on the merits under section 2254(d) makes it unnecessary to conduct an evidentiary hearing under section 2254(e)).

Gantt-El's motion to supplement his habeas petition with additional claims (Doc. 15) is also without merit. Beyond his blanket statement that Brandon and her subordinates have denied him his "first, fourth, sixth, eighth, and fourteenth amendment

rights and [are] using false reports, deceit, fraud and mail thefts as a means to cover up their unlawful acts and omissions," he fails to identify any basis for his motion. (Doc. 15 at 1-2.) In addition, his attempt to raise additional legal arguments and factual allegations is precluded under 28 U.S.C. § 2254(b)(1), which requires a habeas petitioner to exhaust the remedies available in state court before bringing a federal claim. See, e.g., Gray v. Netherland, 518 U.S. 152, 162-63 (1996).[7] Finally, it appears that Gantt-El's supplementary allegations seek to challenge the conditions of his confinement, a claim that falls beyond the "core" of habeas corpus. See Nelson v. Campbell, 541 U.S. 637, 643 (2004) (explaining that challenges to conditions of confinement should be brought as claims under 42 U.S.C. § 1983); Standifer, 653 F.3d at 1280. Therefore, for all of these reasons, Gantt-El's motion to supplement his habeas petition will be denied.

Gantt-El's final motion seeks the "Recusal of Attorney Mary Carla Hollis Pursuant to Local Rule 7.1," one of Brandon's attorneys of record in this case. (Doc. 16.) Apparently, Gantt-El believes that Hollis is interfering with his legal and

---

[7] While a district court has the authority to stay a habeas petition while the petitioner exhausts his state administrative remedies, "the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005). Given the lack of evidentiary support for Gantt-El's naked assertions, the court concludes that they are meritless and that a stay would be improper.

personal mail. (Doc. 16 at 1-2.) Yet he points to no facts in support of his claims beyond his vague statement that "another docket entry sheet from the [U]nited [S]tates [D]istrict [C]ourt Greensboro . . . shows numerous mail delays, thefts and other first, fourth, sixth, eighth and fourteenth amendment violations 'inter alia' missing documents." (Id.) In fact, Gantt-El has failed to identify any "missing documents," show how the docket sheet supports his conclusion that his mail is being delayed or stolen, and, most importantly, how Hollis is alleged to be involved in his allegations in any way. Gantt-El's motion for recusal is spurious and will be denied.

## III. CONCLUSION

For the reasons stated herein, therefore,

IT IS ORDERED that Gantt-El's request for production of documents (Doc. 10); motion for discovery and to expand the record (Doc. 11); motion for an evidentiary hearing (Doc. 14); motion for leave to file a supplement to his habeas petition (Doc. 15); motion to recuse Brandon's attorney (Doc. 16); motion to compel discovery (Doc. 17); and second request for production of documents (Doc. 18) are DENIED.

IT IS FURTHER ORDERED that that Brandon's motion for summary judgment (Doc. 5) is GRANTED, Gantt-El's petition for writ of habeas corpus (Doc. 2) be DENIED, and this action be DISMISSED WITH PREJUDICE, except that, as noted herein, those of

21

Gantt-El's claims that could have been raised under 42 U.S.C. § 1983 are DISMISSED WITHOUT PREJUDICE.

An appropriate Judgment consistent with this Memorandum Opinion and Order will follow.

/s/    Thomas D. Schroeder
United States District Judge

July 30, 2012